REED, MURDOCH & COMPANY, Appellees, v. BROWN BROTHERS, Appellants.

1. **Sales**: CONSIDERATION: PRE-EXISTING DEBT. A pre-existing debt is not a sufficient consideration to support a sale of personal property as against one from whom said property was fraudulently obtained by the vendor.

2. ———: ———: PROMISE OF PAYMENT. Neither will a promise to pay for goods so obtained by the vendor give title to the vendee as against the real owner.

*Appeal from Buena Vista District Court.*—HON. LOT THOMAS, Judge.

TUESDAY, OCTOBER 17, 1893.

ACTION to recover possession of certain articles of merchandise of the value of forty-nine dollars and ninety-three cents. Judgment was entered for the plaintiffs. The defendants appeal upon certificate of the trial judge, that the case involves a question of law, upon which the opinion of this court is desired.— *Affirmed.*

*Frank J. Brown* and *T. D. Higgs*, for appellants.

When a consideration entered into the contract, it became absolutely binding on the parties, even though such consideration is of the most inconsiderable character. 2 Howard, 426; Bouviers Law Dictionary, Consideration; 1 Metc. (Mass.) 84; 12 Vt. 259; 29 Ala. N. S. 188; *Clarke v. Barnes*, 34 N. W. Rep. 419. Although they obtained them by fraud, Rae & Harker had

possession of the goods in controversy, and, at the time of the purchase by appellants, had the legal title in themselves, only subject to become divested by the acts of the defrauded vendors, the appellees in this case. Cobbey on Replevin, section 416; *Root v. French*, 13 Wendell, 570; *Rowley v. Bigelow*, 12 Pick. 312; *Titcombe v. Wood*, 38 Me. 561; Benjamin on Sales [2 Am. Ed.], 395. The goods so held by the fraudulent vendee could be conveyed to an innocent third party for value, and vest in the innocent purchaser a perfect title, good against all the world; the reason being that the vendor delivering the goods, even though induced by fraud, to the fraudulent vendee, passes to him the legal title to the goods when he conveys and delivers the goods to the vendee with the intention of passing the legal title. *Clough v. The London & Northwestern R'y Co.* L. R., 7 Ex. 26; *Padden v. Taylor*, 44 N. Y. 375; Benjamin on Sales [2 Am. Ed.], p. 396; *McCarty v. Vickery*, 12 John. 348; *Mowrey v. Walsh*, 8 Cowen, 238; Cobbey on Replevin, sec. 416; *Sanger v. Waterburg*, 22 N. E. Rep. 404. And the fraudulent vendee having such legal title can convey the same to parties innocent of the fraudulent character of the purchase by the vendee. *Chicago Dock Co. v. Foster*, 48 Ill. 507; Cobbey on Replevin, sec. 416; *Hoffman v. Noble*, 6 Metc. 75; *Root v. French*, 13 Wend. 570; *Perkins v. Anderson*, 65 Iowa, 398. When one of two innocent parties must suffer from the fraud of a third, the loss should fall on him who enabled such third person to commit the fraud. *Butters v. Houghwout*, 42 Ill. 18; *Shufeldt v. Pease*, 16 Wis. 659. A valuable consideration is such as confers some benefit upon the party by whom the promise is made, or upon a third party, at his instance or request, or some detriment sustained at the instance of the party promising by the party in whose favor the promise is made. Bouvier's Law Dictionary, Consideration.

The consideration in the purchase of goods by appellant was threefold: *First*, the acknowledging payment of a pre-existing debt. *Second*, the relinquishment of a right to secure other goods untainted with the fraudulent transaction. *Third*, an agreement to account for all the goods and pay in cash the balance found due to Rae & Harker. A pre-existing debt is a valuable consideration where the goods have been actually delivered to the purchaser in good faith. *Butters v. Houghwout*, 42 Ill. 18; *Habaszthy v. Shandel*, 27 Pac. Rep. 876; *Clark v. Barnes*, 72 Iowa, 567; *Young v. Lee*, 12 N. Y. 551; *Padden v. Taylor*, 44 N. Y. Rep. 512; *Hanchett v. Kimbark*, 2 N. E. Rep. 512; *Butters v. Houghwout*, 89 Am. Dec. 711; *Hoffman v. Noble*, 39 Am. Dec. 711; *Pratt v. Coman*, 37 N. Y. 440; *Work v. Brayton*, 5 Ind. 396; *Babcock v. Jordon*, 24 Ind. 14; *Feder v. Abrahams*, 28 Mo. App. 454; *Young v. Lee*, 2 Kern, 551; *Marble Iron Works v. Smith*, 4 Duer, 376; *Gould v. Leger*, 5 Duer, 260; *Roxborough v. Mesick*, 6 Ohio St. 452; *Payne v. Brusley*, 8 Cal. 260; *McCasky v. Sherman*, 24 Conn. 605; *Blanchard v. Stevens*, 3 Cush. 162; *Shufeldt v. Pease*, 16 Wis. 659; *Woolridge v. Thiels*, Vol. 17, S. W. Rep. (Ark.); *Harbison v. Tuffts*, 27 Pac. Rep. 1014; *Henry v. Vliet*, 49 N. W. Rep. (Neb.) 1107. In *Johnson v. Barney*, 1 Iowa Rep. 531, the court says, that the rights of the holder of a negotiable instrument are the same, whether the debt for which it is transferred is pre-existing, or contracted at the time of the transfer." The same principle was again recognized in *Trustees of Iowa College v. Hill*, 12 Iowa, 462. If, then, the rule has been established that a pre-existing debt is a valuable consideration for the purchase of a promissory note, then *a fortiori*, it is a valuable consideration for the purchase of personal property, as a note is only a representative of property. *Butters v. Houghwout*, 89 Am. Dec. 410; *Shufeldt v. Pease*, 16 Wis. 659; *Root v. French*, 13

Wend. 572; *Manning v. McClure*, 36 Ill. 490. And the innocent purchaser of a fraudulent vendee is protected in his title as against the defrauded vendor. *Johnson v. Barney*, Iowa Rep. 531; *Trustees of Iowa College v. Hill*, 12 Iowa, 462; *Clarke v. Barnes*, 34 N. W. Rep. 419, 721 Iowa, 567; *Perkins v. Anderson*, 65 Iowa, 398; *Lindaue Bros. v. Hay*, 61 Iowa, 663; *Haughtaling v. Hills*, 59 Iowa, 287; *Oswego Starch Factory v. Lendrum*, 57 Iowa, 579; *Hanchett v. Kimbark*, 2 N. E. Rep. 512. The goods being delivered, the contract was complete and a present new consideration entered into the contract; the promising to pay the balance in cash, and to account for the goods taken. In this they assumed new obligations sufficient to sustain the contract of purchase. *Clarke v. Barnes*, 72 Iowa, 567; *Hanchett v. Kimbark*, 2 N. E. Rep. 512.

*C. A. Irwin*, for appellees.

The relinquishment of a right to secure other goods untainted with the fraudulent transaction, certainly constitutes no consideration because in fact the purchaser, relinquished no other or different right than he would have done, had he attempted to enforce collection of this claim by attachment. In *Oswego Starch Factory v. Lendrum*, 57 Iowa, 579, it was held that this constitutes no consideration whatever. An indorsee to whom a note is transferred as collateral security for a pre-existing debt is not entitled to be considered as a purchaser for value. *Trustees of Iowa College v. Hill*, 12 Iowa, 462; *Ryan v. Chew*, 13 Iowa, 589; *Ruddick v. Lloyd*, 15 Iowa, 441; *Union National Bank v. Barber*, 56 Iowa, 559; *Bone v. Tharp*, 63 Iowa, 225. In *Oswego Starch Factory v. Lendrum*, 57 Iowa, 579, it is held that an attaching creditor is not an innocent purchaser for value as against a defrauded vendor of personal property. The creditor of the fraudulent

vendee who by agreement takes goods then in possession of such fraudulent vendee in payment of his debt, acquires no better title from a voluntary surrender of the goods than he would obtain by a levy of an attachment.   In both cases the essential facts are, that the subsequent purchaser parts with no new consideration, and that the creditor is in no worse plight than before. Cobbey on Replevin, sections 285, 286; Tiedeman on Sales, section 329; *Henderson v. Gibbs*, 39 Kansas, 679; *Morrison v. Adoue*, 13 S. W. Rep. (Texas) 166; *Sleeper v. Davis*, 64 N. H. 59; *Partridge v. Rubin*, 64 N. Y. Supreme Court, 657; *McIntosh v. Hill*, 1 S. W. Rep. (Ark.) 688; *Eaton v. Davidson*, 21 N. E. Rep. (Ohio) 442; *Foster v. Ambler*, 5 S. Rep. (Florida) 263; *Hoyt v. Turner*, 4 S. Rep. (Ala.) 658; *Sargent v. Stearne*, 23 Cal. 360; *Schulein v. Hainer*, 29 Pac. Rep. (Kan.) 171; *Slagle v. Goodnow*, 48 N. W. Rep. (Minn.) 402; *Levy v. Cooke*, 21 Atl. Rep. (Pa.) 858; *Root v. French*, 13 Wend. 570; *Weaver v. Barton*, 49 N. Y. 286; *Hide v. Ellery*, 18 Md. 496; *McLeod v. Bank*, 42 Miss. 99.   This court has frequently held that a preexisting debt is not a sufficient consideration in the purchase of land, to defeat prior equities.   *Phelps v. Fockler*, 61 Iowa, 340; *Kittery v. Chapman*, 36 Iowa, 350; *Sillyman v. King*, 36 Iowa, 212.   In *Stevens v. Brennan*, 79 N. Y. 254, the court used the following language: "In a suit by the true owner to recover the goods against a person who claims title under the fraudulent vendee, the burden is upon the party claiming such title of proving that he is a purchaser in good faith and for value."   This case is cited with approval and  followed by the supreme court of Pennsylvania in *Levy v. Cooke*, 32 Atl. Rep. 858.

Given, J.—The certificate upon which this appeal is taken is as follows:

"Where goods are purchased from an insolvent firm, but without any knowledge on the part of the pur-

chaser of said insolvency, to be paid for in part with a pre-existing debt, and a promise on the part of the purchaser, to pay the balance on demand, but where the balance is not demanded or paid, and a receipt given to the vendor by the purchaser for the debt, as aforesaid, and when the purchaser is told to take any goods he chooses from a large quantity, and the purchaser takes goods that were obtained by fraud on the part of the vendee, and the defrauded vendor rescinds the sale, does such a purchase constitute a purchase for value, as against the defrauded vendor?''

It is not questioned in the record, or in argument, but that the appellees had the right to, and did, rescind the contract by which they sold the goods in controversy to the appellants' vendors, Rae & Harker, and would be entitled to recover them from Rae & Harker, if still held by them. Nor is it questioned but that the appellants were innocent purchasers of the goods from Rae & Harker. The sole contention is whether they were purchasers for value, or, in other words, whether the pre-existing debt, and the promise to pay the excess of the value of the goods over the amount of the debt, was a valuable consideration, as against the defrauded vendors, the appellees.

I. We first inquire whether the pre-existing debt was a valuable consideration for the purchase. This question is presented for the first time in this court. Though the amount in controversy is small, counsel urge the importance of the question, and have aided us in its solution by the marked care and ability with which it is presented. Cobbey, in his Law of Replevin, section 286, states the law to be as follows: ''Goods obtained by fraud, and used to pay a pre-existing debt, may be replevied by the true owner. Where goods obtained by fraud are turned over to pay a pre-existing debt of the vendee, either by actual sale or by pledge, such sec-

1. SALES: consideration: pre-existing debt.

ond vendee is not considered as an innocent purchaser for value, as, if he is compelled to surrender the goods to the true owner, he is in no worse condition than before. In such cases it is well settled that the true owner may retake his property." See Newmark on Sales, section 205. Of the many cases which we find fully supporting this statement of the law, we cite the following, most of which are directly in point: *Root v. French,* 13 Wend. 570; *Sargent v. Sturm,* 23 Cal. 359; *Durell v. Haley,* 1 Paige, 491, 492; *Linnard's Appeal,* (Pa. Sup.) 3 Atl. Rep. 840; *Bradley v. Obear,* 10 N. H. 477; *Farley v. Lincoln,* 51 N. H. 577; *Sleeper v. Davis,* (N. H.) 6 Atl. Rep. 201; *Johnson v. Peck,* 1 Woodb. & M. 334; *Ruth v. Ford,* 9 Kan. 17; *Thompson v. Rose,* 41 Am. Dec. 121; *Dickerson v. Tillinghast,* 4 Paige, 215; *Stevens v. Brennan,* 79 N. Y. 254; *Poor v. Woodburn,* 25 Vt. 234; *Ratcliffe v. Langston,* 18 Md. 383; *Spira v. Hornthall,* 77 Ala. 137; *Henderson v. Gibbs,* 39 Kan. 680, 18 Pac. Rep. 926; *Eaton v. Davidson,* 46 Ohio St. 355, 21 N. E. Rep. 442. In *Oswego Starch Factory v. Lendrum,* 57 Iowa, 573, this court held, that an attaching creditor of a fraudulent vendee parts with no consideration; that he stands in the shoes of the vendee, and can not hold the property attached, as against the defrauded vendor. The reasoning in that case is in harmony with the cases cited above.

The only cases we have discovered, holding contrary to the above mentioned cases, are *Shufeldt v. Pease,* 16 Wis. 689; *Butters v. Haughwout,* 42 Ill. 18. The appellants cited *Johnson v. Barney,* 1 Iowa, 531, and *Trustees v. Hill,* 12 Iowa, 463. In the former case it is held, in harmony with the general current of decisions, "that the rights of the holder of a negotiable instrument are the same whether the debt for which it is transferred is pre-existing, or contracted at the time of the transfer." The latter case recognizes this rule as applying to transfers of negotiable paper in payment

of a pre-existing debt, and holds that if the transfer is as collateral security for a pre-existing debt, without any new consideration, an assignee of the negotiable instrument is not a purchaser for value, in the usual course of trade. This case has been followed in *Ryan v. Chew*, 13 Iowa, 589; *Ruddick v. Lloyd*, 15 Iowa, 441; *Union Nat. Bank v. Barber*, 56 Iowa, 559; *Bone v. Tharp*, 63 Iowa, 223.

It being thus settled, as the law of this state, that a pre-existing debt is a valuable consideration for the transfer of a negotiable instrument, the appellants contend that the same rule should apply to the transfer of any chattel property. In considering this claim, we must have in mind the distinction between negotiable instruments and other chattels. It is unquestionably the policy of the law, in the interest of trade and commerce, to facilitate the circulation of commercial paper. The necessities of commerce require that bills of exchange and promissory notes shall be treated as possessing some of the attributes of money; and to give them this attribute, and to give confidence in their reception, they are protected in the hands of an innocent holder for value, before due, from defenses growing out of the dealings of the prior parties. Negotiable instruments are excepted from the rule with regard to other property. It is only he who has a title himself to a personal chattel that can convey it to another; but the *bona fide* assignee for value of even a stolen note, who takes it innocently, in the course of trade, before due, with due caution, has a valid title, although his assignor had no title whatever. It is these distinctions between commercial instruments and other property that have led the courts to hold that a pre-existing debt is a valid consideration for the transfer of a negotiable instrument. See 3 Kent's Commentaries, 79; *Eaton v. Davidson*, 46 Ohio St. 355; *Carlisle v. Wishart*, 11 Ohio, 172; *McLeod v. Bank*, 42 Miss. 112.

In *Swift v. Tyson*, 16 Pet. 1, Justice STORY, after reviewing the authorities, and holding that a pre-existing debt does constitute a valuable consideration for the transfer of a negotiable instrument before due, gives the following reasons: "It is for the benefit and convenience of the commercial world to give as wide an extent as practicable to the credit and circulation of negotiable paper, that it may pass, not only as security for new purchases and advances made upon the transfer thereof, but also in payment of, and as security for, pre-existing debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear from taking any legal steps to enforce his rights. The debtor also has the advantage of making his negotiable securities of equivalent value to cash. But, establish the opposite conclusion that negotiable paper can not be applied in payment of, or as security for, pre-existing debts, without letting in all the equities between the original and antecedent parties, and the value and circulation of such securities must be essentially diminished, and the debtor driven to the embarrassment of making a sale thereof, often at a ruinous discount, to some third person, and then, by circuity, to apply the proceeds to the payment of his debts. What, indeed, upon such a doctrine, would become of that large class of cases where new-notes are given by the same or by other parties, by way of renewal or security, to banks, in lieu of old securities discounted by them, which have arrived at maturity? Probably more than one half of all bank transactions in our country, as well as those of other countries, are of this nature. The doctrine would strike a fatal blow at all discounts of negotiable securities for pre-existing debts. This question has been several times before this court, and it has been uniformly held that it makes no difference whatsoever, as to the rights of the holder, whether the debt for which the negotiable instrument

is transferred to him is a pre-existing debt, or is contracted at the time of the transfer. In each case he equally gives credit to the instrument."

*Manning v. McClure*, 36 Ill. 490, cited, only determines that a negotiable note taken as collateral security for a pre-existing debt was taken for value. The question under consideration was not involved in that case. We think it is entirely clear, upon reason and from these authorities, that while, from the necessities of the case, and the nature of negotiable instruments, a pre-existing debt is a valuable consideration for their transfer, it should not be so held as to other personal property.

II. It only remains to determine whether the promise to pay the excess of the value of the goods over the amount of the debt is such a valuable consideration as will sustain the transfer. We have seen that, where a prior debt is the only consideration, it is held not to be a purchase for value, because the purchaser parts with nothing; that, if he is compelled to surrender the goods to the true owner, he has his claim against his debtor, and is in no worse position than before. The same reasons apply to this promise to pay the difference. If, as some of the cases hold, Rae & Harker had no title to the goods that they could transfer, as against the appellees, then there was no consideration for the promise to pay this difference.

2. ——: ——:
promise of
payment.

The question certified is whether this purchase by the appellants constitutes a purchase for value, as against the defrauded vendors. Our conclusion is that the question must be answered in the negative, and the judgment of the district court AFFIRMED.